

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUL 2 9 2009

BOARD OF TRUSTEES, NATIONAL )
STABILIZATION AGREEMENT OF )
THE SHEET METAL INDUSTRY )
TRUST FUND and )
  )
BOARD OF TRUSTEES, )
SHEET METAL WORKERS' )  Civil Action No. 1:09cv0444 (TSE/JFA)
NATIONAL PENSION FUND, )
  )
    Plaintiffs, )
  )
    v. )
  )
ENVIRONMENTAL BALANCING )
COMPANY, )
  )
    Defendant. )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to

Fed. R. Civ. P. 55(b)(2). (Docket no. 7). Plaintiffs are the Board of Trustees of the National

Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") and the Board of

Trustees of the Sheet Metal Workers' National Pension Fund ("National Pension Fund") and

they seek a default judgment against defendant Environmental Balancing Company ("EBC").

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court

his proposed findings of fact and recommendations, a copy of which will be provided to all

parties.

## **Procedural Background**

On April 24, 2009, the plaintiffs filed this action alleging that EBC is obligated to pay

them $15,496.93 for overdue contributions, liquidated damages, interest and late charges.

(Docket no. 1).  A summons was issued for the complaint on April 29, 2009.  (Docket no. 3).

The summons and complaint were served on EBC by personal service on May 26, 2009.

(Docket no. 4).  The affidavit of service for EBC indicates that the summons and complaint was

served on Robert M. McNamara, who accepted service on behalf of EBC.  (Docket no. 4).  In

accordance with Fed. R. Civ. P. 12(a), a responsive pleading was due on June 15, 2009, 20 days

after EBC was served with the summons and complaint.  EBC failed to file a responsive

pleading in a timely manner and on June 16, 2009, the plaintiffs filed their request for entry of

default.  (Docket no. 5).  The request for default included a declaration under the penalty of

perjury that the defendant was served with process and that the time for filing a responsive

pleading had expired.  (Docket no. 5).  The Clerk entered default against EBC pursuant to Fed.

R. Civ. P. 55(a) on June 17, 2009.  (Docket no. 6).

On July 10, 2009, the plaintiffs filed a motion for default judgment with a supporting

memorandum and declarations from Harold Bradshaw, Walter Shaw and Philip Lozano and a

notice of hearing for July 17, 2009 at 10:00 a.m.  (Docket nos. 7-9).  The motion for default

judgment, supporting memorandum and notice of hearing were served on EBC by mail on July

10, 2009.  (Docket nos. 7-9).  On July 17, 2009 counsel for the plaintiffs appeared at the hearing

on the motion for default judgment and no one appeared on behalf of EBC.

## **Factual Background**

The following facts are established by the complaint (Docket no. 1), the motion for

default judgment and the declarations filed in support of the motion for default judgment

(Docket nos. 7, 8).

SASMI is the collective name of the trustees of the National Stabilization Agreement of

the Sheet Metal Industry Trust Fund, a trust established under 29 U.S.C. § 186(c)(5).  (Compl. ¶

4).  The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the

meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the

meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit

plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1).  (Compl. ¶ 4).  SASMI is

administered in Alexandria, Virginia.  (Compl. ¶ 7).

The National Pension Fund is the collective name of the trustees of the Sheet Metal

Workers' National Pension Fund, a trust established under 29 U.S.C. § 186(c)(5).  (Compl. ¶ 5).

The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the

meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the

meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee pension benefit

plan" within the meaning of 29 U.S.C. §§ 1002(37) and (3).  (Compl. ¶ 5).  The National

Pension Fund is administered in Alexandria, Virginia.  (Compl. ¶ 7).

EBC is an Ohio corporation and is an employer in an industry affecting commerce as

defined by 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12).  (Compl. ¶ 9).  EBC has a

place of business in Westerville, Ohio.  (Compl. ¶ 9).

EBC employs employees represented for the purposes of collective bargaining by the

Sheet Metal Workers' International Association and/or one or more of its affiliated local unions,

3

which are labor organizations representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 10). EBC entered into and agreed to be bound by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 11). EBC also entered into and agreed to be bound by the terms of the agreements and declarations of trust of SASMI and the National Pension Fund (the "Trust Agreements") made between certain employers and employee representatives. (Compl. ¶ 12).

Under the Labor Contract and the Trust Agreements, EBC agreed to make timely contributions to SASMI and the National Pension Fund on behalf of employees who were covered by those agreements, to file monthly remittance reports detailing all employees or work for which contributions were required, to produce, upon request, all books and records deemed necessary to conduct an audit of EBC's records concerning its obligations to make payments to SASMI and the National Pension Fund, and to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation expended by SASMI and the National Pension Fund to collect any amounts due as a consequence of EBC's failure to comply with its obligations detailed above. (Compl. ¶ 13). Plaintiffs allege that payments due to them are calculated separately for each of them on remittance reports that are required to be prepared monthly by each contributing employer. (Compl. ¶ 14). A complete report and payment must be submitted by the twentieth day of each month following the month in which the work was performed, and are deemed delinquent if such payment and report is not received. (Compl. ¶ 15).

Under the Labor Contract, Trust Agreements, National Pension Fund Rules and Regulations and/or applicable law, EBC is required to pay the National Pension Fund interest on any delinquent contributions at eight and one-half percent (8.5%) per annum; late charges equal to the greater of fifty dollars ($50.00) for each month of contributions paid after the due date,

4

and before any lawsuit is filed, or ten percent (10%) of the contributions dues for those months; liquidated damages equal to the greater of interest on all delinquent contributions or twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed or which have become delinquent subsequent to such filing; and all attorney's fees and costs incurred by the National Pension Fund as a result of EBC's failure to comply with its obligations.  (Compl. ¶ 16).

Under the Labor Contract, Trust Agreements, SASMI Rules and Regulations and/or applicable law, EBC is required to pay SASMI interest on any delinquent contributions at eight and one-half percent (8.5%) per annum; liquidated damages equal to twenty percent (20%) of the contribution amount for contributions paid after the date due; and all attorney's fees and costs incurred by SASMI as a result of EBC's failure to comply with its obligations.  (Compl. ¶ 17).

In Count I, for EBC's violation of 29 U.S.C. § 1145, the plaintiffs seek a sum certain of $15,496.93[1] plus any amounts that become due and owing during the pendency of this litigation together with late charges, interest from the due date until the date of payment, liquidated damages, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment.  (Compl. ¶¶ 19-22).  In Count II, the plaintiffs seek an audit of all records under the control of EBC to determine work for which contributions are due, and that

------

[1] The complaint seeks a sum certain of $15,496.93.  Subsequent to the filing of the complaint and prior to the filing of the motion for default judgment, EBC submitted remittance reports which indicated the precise amount due, $15,132.98.  That is the amount sought in the motion for default judgment, and upon representation of counsel, this is the amount still sought. Further, at the hearing in this matter on July 17, 2009 counsel for the plaintiffs confirmed that the plaintiffs are not seeking pre-litigation liquidated damages under Count I, so the amount sought in Count I should be $13,423.78, calculated as $15,132.98 less $1,709.20, the amount of pre-litigation liquidated damages.

EBC be required to pay for that audit. (Compl. ¶¶ 23-29). In Count III, the plaintiffs seek the contributions found to be due and owing following the audit, together with late charges, interest, liquidated damages, and reasonable attorney's fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment. (Compl.¶¶ 30-32). In Count IV, for EBC's breach of contract, the plaintiffs seek a sum certain of $15,496.93[2] plus any amounts which become due and owing during the pendency of the litigation or as a result of an audit together with liquidated damages, interest, audit costs and attorney's fees and costs incurred in this action or the collection or enforcement of any judgment, and pre-litigation liquidated damages. (Compl. ¶¶ 33-36). In Count V, the plaintiffs seek the sum certain plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit, together with liquidated damages, interest, audit costs, and attorney's fees and costs incurred in this action or enforcement of any judgment. (Compl. ¶¶ 37-38).

In the motion for default judgment, the National Pension Fund and SASMI state that they are owed the amounts as detailed below under Count I for violation of 29 U.S.C. § 1145.

| Plaintiff | Contributions | Interest | Liquidated Damages | Legal Costs and Fees | Pre Litigation Liquidated Damages | Total |
|---|---|---|---|---|---|---|
| National Pension Fund | $4,079.51 | $280.06 | $815.88 | $2,505.54 | --- | $7,680.99 |
| SASMI | $3,346.77 | $191.04 | $669.32 | $1,535.66 | --- | $5,742.79 |
| Total | $7,426.28 | $471.10 | $1,485.20 | $4,041.20 | --- | $13,423.78 |

---

[2] See footnote 1. As set forth in the motion for default judgment the amount currently sought by plaintiffs in Count IV is $15,132.98.

In the motion for default judgment, the National Pension Fund and SASMI state that
they are owed the amounts as detailed below under Count IV for breach of contract.

| Plaintiff | Contributions | Interest | Liquidated Damages | Legal Costs and Fees | Pre Litigation Liquidated Damages | Total |
|-----------|---------------|----------|--------------------|----------------------|-----------------------------------|-------|
| National Pension Fund | $4,079.51 | $280.06 | $815.88 | $2,505.54 | $1,032.65 | $8,713.64 |
| SASMI | $3,346.77 | $191.04 | $669.32 | $1,535.66 | $676.55 | $6,419.34 |
| Total | $7,426.28 | $471.10 | $1,485.20 | $4,041.20 | $1,709.20 | $15,132.98 |

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default
judgment when "a party against whom a judgment for affirmative relief is sought has failed to
plead or otherwise defend." The court must have both subject matter and personal jurisdiction
over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ.
P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a
responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe
Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts
alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as
alleged state a claim."). Rule 55(b)(2) provides that a court may conduct a hearing to determine
the amount of damages, establish the truth of any allegation by evidence, or investigate any
other matter.

7

## Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under Section 502 of

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132.  ERISA

Section 502 provides that U.S. district courts have jurisdiction over civil actions brought under

this title.  This case is properly before the court under its federal question jurisdiction pursuant

to 29 U.S.C. § 1132(e) since it is brought under ERISA for an alleged failure to make

contributions in accordance with a collective bargaining agreement or multi-employer plan.  The

plaintiffs further allege that this court has subject matter jurisdiction under Section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  That section provides that

U.S. district courts have jurisdiction over suits for violation of contracts between an employer

and a labor organization representing employees in an industry affecting commerce.  This case

is also properly before the court pursuant to 29 U.S.C. § 185(a) since it is brought under the

LMRA for violation of a contract between an employer and a labor organization.

ERISA Section 502 states that an action under this title may be brought in the "district

where the plan is administered" and "process may be served in any other district where a

defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  The plaintiffs state that they are

administered in Alexandria, Virginia.  (Compl. ¶ 7).  On May 26, 2009, the summons and

complaint were served on Robert M. McNamara who accepted service on behalf of EBC.

(Docket no. 4).  Venue is proper in this court and this court has personal jurisdiction over the

defendant since the plaintiffs are administered within the Alexandria Division of the Eastern

District of Virginia.  *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals,*

*Inc.*, 964 F. Supp. 1040 (E.D. Va. 1997) (personal jurisdiction in an ERISA action should be

8

determined on the basis of the defendant's national contacts with the United States pursuant to the *Due Process Clause of the Fifth Amendment* and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendant and that venue is proper in this court.

### Grounds for Entry of Default

The complaint was served on Robert M. McNamara who accepted service on behalf of EBC on May 26, 2009. (Docket no. 4). Under Fed. R. Civ. P. 12(a), a responsive pleading was due on June 15, 2009, twenty days after the complaint had been served on the defendant. After the defendant failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on June 16, 2009. (Docket no. 5). The Clerk of the Court entered a default on June 17, 2009. (Docket no. 6).

The undersigned magistrate judge recommends a finding that the defendant was served properly, that it failed to file a responsive pleading in a timely manner and that the Clerk properly entered a default as to the defendant.

### Liability and Measure of Damages

According to Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the defendant did not file a responsive pleading and is in default, it admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

9

**Count I**

As set forth in the complaint, EBC failed to submit remittance reports and contributions to SASMI for the period July 2008 through February 2009. EBC also failed to submit remittance reports and contributions to the National Pension Fund for the same months. (Compl. ¶ 20). Specifically, 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of its claim for damages, SASMI submitted a declaration from Harold W. Bradshaw. (Docket no. 8, Ex. 1). Mr. Bradshaw is the Office Manager for SASMI, and is responsible for determining the amount of a contributing employer's delinquency and coordinating all matters relating to its collection. (Bradshaw Decl. ¶ 1). The information contained in the declaration of Mr. Bradshaw submitted on behalf of SASMI and a Delinquency

Calculation Summary (Docket no. 8, Ex. 4(b)) establish that EBC owes at least $5,742.79 to SASMI, which includes $3,346.77 in unpaid contributions for the period July 2008 through February 2009; interest of $191.04 calculated pursuant to the SASMI Rules, Article II, Section 2 at a rate of 8.5% per annum from the date the payment was due through July 31, 2009; liquidated damages of $669.32 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to the SASMI Rules, Article II, Section 1(B)(ii); and legal costs and fees of $1,535.66. (Bradshaw Decl. ¶ 6, Docket no. 8, Ex. 4(b)). The declaration also establishes that EBC routinely fails to submit proper contribution amounts and timely monthly remittance reports. (Bradshaw Decl. ¶ 7).

In support of its claim for damages, the National Pension Fund submitted a declaration from Walter Shaw. (Docket no. 8, Ex. 5). Mr. Shaw is the Manager of Billing and Eligibility for the National Pension Fund, and is familiar with the payment histories of employers obligated to make contributions to the National Pension Fund. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw submitted on behalf of the National Pension Fund establishes that EBC is obligated to submit monthly remittance reports and pay contributions to the National Pension Fund for time worked or paid to their covered employees. (Shaw Decl. ¶ 3). EBC has failed to remit its contributions in a timely manner for the period August 2008 through February 2009. (Shaw Decl. ¶ 6). EBC owes at least $7,680.99 to the National Pension Fund, which includes $4,079.51 in unpaid contributions for the period August 2008 through February 2009; interest of $280.06 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5 % per annum from the date the payment was due through July 31,

11

2009; liquidated damages of $815.88 on the contributions unpaid at the commencement of

litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds'

Trust Document and Section III(B) of the Policies and Procedures for Collection of

Contributions; and legal costs and fees of $2,505.54. (Shaw Decl. ¶ 7, Docket no. 8, Ex. 4(b)).

   SASMI and the National Pension Fund both submitted a declaration from Philip A.

Lozano detailing the attorney's fees and costs incurred in this action. (Docket no. 8, Ex. 8).

The total amount of the attorney's fees and costs incurred was $4,041.20. The $3,533.00 in

attorney's fees is comprised of 16.5 hours of attorney time and 10.3 hours of paralegal time, and

the amount of costs was $508.20 which is comprised of photocopy fees, service fees, special

delivery fees, filing fees, and postage charges. (Lozano Decl. ¶ 2, Docket no. 8, Exs. 9, 10).

The hourly rates charged for the attorney time ranged from $180.00 to $195.00 and the hourly

rate for the legal assistant was $70.00. (Lozano Decl. ¶ 3). The undersigned magistrate judge

has reviewed the declaration of Mr. Lozano and recommends a finding that the amount

requested for attorney's fees and costs by SASMI and the National Pension Fund is reasonable.[3]

   For these reasons the undersigned magistrate judge recommends that a default judgment

be entered in favor of the Sheet Metal Workers' National Pension Fund and the National

---

   [3] The Lozano declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable fee award. While it includes exhibits indicating regional associate hourly billing rates and a survey of Ohio hourly billing rates from 2007, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278. However, since the defendant has not contested the requested amount of fees in this case, the court will accept the allegations set forth by SASMI and the National Pension Fund concerning the reasonableness of these fees as true. The total amount of the fees and costs requested are consistent with fees and costs incurred in similar cases and awarded by this court.

Stabilization Agreement of the Sheet Metal Industry Trust Fund against the Environmental

Balancing Company on Count I of the complaint for violation of 29 U.S.C. § 1145 in the

amounts shown below:

| Plaintiff | Contributions | Interest | Liquidated Damages | Legal Costs and Fees | Pre Litigation Liquidated Damages | Total |
|---|---|---|---|---|---|---|
| National Pension Fund | $4,079.51 | $280.06 | $815.88 | $2,505.54 | --- | $7,680.99 |
| SASMI | $3,346.77 | $191.04 | $669.32 | $1,535.66 | --- | $5,742.79 |
| Total | $7,426.28 | $471.10 | $1,485.20 | $4,041.20 | --- | $13,423.78 |

### Count II

In Count II of the complaint SASMI and the National Pension Fund allege that they are

without sufficient information or knowledge to plead the precise nature, extent and amount of

EBC's delinquency because the books, records and other information necessary to make that

determination are in EBC's exclusive possession, custody and control. (Compl. ¶ 25). They

further claim that EBC is required by the Labor Contract, Trust Agreements, rules and

regulations adopted by the plaintiffs and/or applicable law to permit them to conduct an audit of

EBC's records in order to determine the precise amount of the delinquent contributions.

(Compl. ¶ 27). As a result, SASMI and the National Pension Fund ask the court to enjoin EBC

to permit an audit of all records under its control, or to cooperate in alternative methods for

determination of work for which contributions are due, order EBC to pay for such audit, and

grant such other and further relief, legal or equitable, as may be just, necessary or appropriate.

13

Here, SASMI and the National Pension Fund allege, which allegation is taken as true in this default proceeding, that under the Labor Contracts, Trust Agreements, rules and regulations adopted by the Funds and applicable law, EBC agreed (1) to make full and timely payment to the Funds; (2) to file monthly remittance reports with the Funds; (3) to produce, *upon request by the Funds*, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit; and (4) to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorney's fees, expended by the Funds to collect any unpaid amounts due. (Compl. ¶ 13) (emphasis added). *See also* Sheet Metal Workers' National Pension Fund Policies and Procedures for the Collection of Contributions, (Docket no. 8, Ex. 7), Section VI(B)(1)(d) ("An audit confirmation letter will be sent to the Employer before the audit...Employers who refuse to permit an audit in whole or in part may be subject to legal action without further notice....") and Section VI(B)(4)("Should an Employer fail to submit to an audit or fail to provide access to the records or information necessary for the auditor to complete the audit, the Employer shall be assessed all costs incurred in the audit."); Agreement between the Sheet Metal Contractors of Central Ohio and Sheet Metal Workers Local Union No. 24 (Docket no. 8, Ex. 3, p. 45)("In the event an audit of the Employer's records is refused...the Trustees or Union shall have to right to take such legal action as may be necessary...."). While there is no doubt that EBC is required to submit to an audit upon request, there does not appear to be any affirmative allegation in the complaint or in the declarations of Messrs. Bradshaw, Shaw or Lozano that SASMI or the National Pension Fund has requested that EBC produce those records referenced in paragraph 13 of the complaint. For these reasons, the undersigned magistrate judge recommends that the

14

relief requested in Count II of the complaint be denied, without prejudice to SASMI and the National Pension Fund to re-file a similar claim if they request an audit within the contemplation of the Labor Contract and Trust Agreements and the applicable rules and regulations, and EBC refuses to participate.

### Count III

In Count III SASMI and the National Pension Fund seek judgment against EBC for any contributions found to be due and owing by the audit they seek in Count II, together with late charges, interest, liquidated damages, and reasonable attorney's fees and costs.

For the reasons discussed in Count II above, the undersigned magistrate judge recommends that the relief requested in Count III of the complaint be denied, without prejudice to SASMI and the National Pension Fund to re-file a similar claim if they determine that additional amounts are owed based on any future audit.

### Count IV

In Count IV SASMI and the National Pension Fund allege that EBC has not paid them as required by the Labor Contract. (Compl. ¶ 34). They claim that EBC owes them at least $15,132.98 under the Labor Contract. (Compl. ¶ 35, Docket no. 8, Ex. 4(a)). Specifically, 29 U.S.C. § 185(a) provides that

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

As an initial matter, SASMI and the National Pension Fund have standing to seek relief for breach of contract under the LMRA as third-party beneficiaries of the collective bargaining agreement. *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, 2008 WL 4329294 at *5 (E.D. Va. Sept. 15, 2008)(citing *Bakery and Confectionary Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997)).

In support of its claim for damages under the Labor Contract, SASMI also relies upon the declaration of Harold W. Bradshaw and a Delinquency Calculation Summary, as discussed in Count I. (Docket no. 8, Exs. 1, 4(a)). SASMI seeks a total of $6,419.34, comprised of $3,346.77 in contributions, $191.04 in interest, $669.32 in liquidated damages, $1,535.66 in legal costs and fees, and $676.55 in pre-litigation liquidated damages. (Bradshaw Decl. ¶ 6, Docket no. 8, Ex. 4(a)). The sole difference between the amounts sought in Count I and this Count is the claim for pre-litigation liquidated damages, which are available under SASMI's Amended Rules and Regulations, Article II, Section 1(B)(i).[4] (Docket no. 8, Ex. 2, Bradshaw Decl. ¶ 6(d)).

In support of its claim for damages under the Labor Contract, the National Pension Fund also relies upon the declaration of Walter Shaw and a Delinquency Calculation Summary, as discussed in Count I, above. (Docket no. 8, Exs. 5, 4(a)). The National Pension Fund seeks a total of $8,713.64, comprised of $4,079.51 in contributions, $280.06 in interest, $815.88 in liquidated damages, $2,505.54 in legal costs and fees and $1,032.65 in pre-litigation liquidated damages. (Shaw Decl. ¶ 7, Docket no. 8, Ex. 4(a)). The sole difference between the amounts

---

[4]   SASMI's Amended Rules and Regulations provide for pre-litigation liquidated damages, or late charges, in the amount of ten percent (10%) of the contributions which are paid late before a lawsuit is filed. Pre-litigation liquidated damages were calculated for the period January 2007 through August 2008. (Docket no. 8, Exs. 2, 4(a)).

16

sought in Count I and this Count is the claim for pre-litigation liquidated damages, which are available under Article V, Section 2(c) of the National Pension Fund's Trust Document (Docket no. 8, Ex. 6, Shaw Decl. ¶ 7(d)) and Section III(B) of the Policies and Procedures for the Collection of Contributions.[5] (Docket no. 8, Ex. 7, Shaw Decl. ¶ 7(d)).

SASMI and the National Pension Fund collectively claim $4,041.20 in attorney's fees and costs under this count and they rely upon the declaration of Philip A. Lozano in support of their claims for, and the reasonableness of, the attorney's fees and costs in this count. (Docket no. 8, Ex. 8). The undersigned magistrate judge has reviewed the declaration of Mr. Lozano and as discussed above, recommends a finding that the amount requested for attorney's fees and costs by SASMI and the National Pension Fund is reasonable.

For these reasons the undersigned magistrate judge recommends that a default judgment be entered in favor of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund against the Environmental Balancing Company on Count IV of the complaint for breach of contract in the amounts shown below:

| Plaintiff | Contributions | Interest | Liquidated Damages | Legal Costs and Fees | Pre Litigation Liquidated Damages | Total |
|---|---|---|---|---|---|---|
| National Pension Fund | $4,079.51 | $280.06 | $815.88 | $2,505.54 | $1,032.65 | $8,713.64 |
| SASMI | $3,346.77 | $191.04 | $669.32 | $1,535.66 | $676.55 | $6,419.34 |
| Total | $7,426.28 | $471.10 | $1,485.20 | $4,041.20 | $1,709.20 | $15,132.98 |

[5] The National Pension Fund's Trust Document provides for pre-litigation liquidated damages, or late charges, in the amount of fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions paid after the due date, whichever is greater. Pre-litigation liquidated damages were calculated for the period January 2007 through August 2008. (Docket no. 8, Exs. 4(a), 6).

17

**Count V**

Finally, in Count V of the complaint SASMI and the National Pension Fund seek contributions under the Labor Contract with respect to any amounts found due in the audit they seek in Count II. (Compl. ¶ 38). For the same reasons set forth in the discussion of Count III above, the undersigned magistrate judge recommends that the relief requested in Count V of the complaint be denied, without prejudice to SASMI and the National Pension Fund to re-file a similar claim if they determine that additional amounts are owed based on any future audit.

As discussed above, it is the recommendation of the undersigned magistrate judge that SASMI and the National Pension Fund are entitled to judgment on Count I for EBC's violation of 29 U.S.C. § 1145 and on Count IV for EBC's breach of contract. It should be noted, however, that while the plaintiffs are entitled to a judgment on each of those Counts, the relief sought in Counts I and IV overlap, so that the total amount to which SASMI is entitled is $6,419.34, and the total amount to which the National Pension Fund is entitled is $8,713.64, for a grand total of $15,132.98.

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Environmental Balancing Company at 6602 Chelton Place, Westerville, Ohio, 43082, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within ten (10) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives

18

appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 29ᵗʰ day of July, 2009.

_____ /s/ _____

John F. Anderson
United States Magistrate Judge

United States Magistrate Judge

Alexandria, Virginia